Our next case on the calendar is John Yelle v. Mount Saint Mary College, 21-480. John Yelle v. Mount Saint Mary College, 21-480. I always mispronounce names, so please tell me how I should pronounce your name properly. Reynos. There's always ambiguity in my family. Mr. Reynos. Thank you, Your Honor. Okay, very good. Thank you very much. And Mr. Reynos, I understand you would like to reserve three minutes for rebuttal? Yes, thank you, Your Honor. Please, I'll ask the courtroom deputy to reset the shot clock, and then we're off. Thank you. I'll try to shoot straight then. Good morning, Your Honors. I'm Michael Reynos, representing the plaintiff and appellant John Yelle in this case. The district court said that the plaintiff couldn't go into the theater. This was in his oral argument. He said, we couldn't go into the theater because unless you have a story that's linked, and the court expressed this in its opinion that we did not have a story that was linked, that the story about the assistant professor position was not sufficiently linked to the visiting professor position. And so we could not go into the theater. We could not be in court to argue the case in the alternative that Mr. Yelle was, Dr. Yelle was denied the visiting professor position, and went on to say there was nothing in the EOC charged. That's what this was based on, the lack of linking in the EOC charge to put those notices of allegation in front of the EOC. Now, the standard in evaluating what would be in front of the EOC is very broad. You just have to show that you could expect that from the conduct alleged, an investigation would grow out, the EOC would grow, the investigation would grow such that the EOC would be then looking into this issue. Now, our position is they were incredibly linked on the facts because this all happened simultaneously. There's the memo. I'm sorry, Your Honor. Thank you. Actually, would you be able to address a related point? And if you want to finish your thought about the EOC and exhaustion, that's fine. I guess one question is whether you pled the visiting professor position adequately in your complaint. So let's assume for the sake of argument that it was exhausted. Did you adequately plead it? Well, we believe it was adequately pleaded the same way it was pleaded in the EOC charge. Just to indulge us, could you point me to the particular portion of your complaint, a paragraph or two, where you would say that if we only looked at paragraph X, Y, and Z, it was adequately pled? And that at least would be helpful to me. I'll get that. You can pull it back in rebuttal maybe while your adversary is talking. But the gist of that complaint is that we discussed that Mr. Yelley, we compared very carefully the qualifications of Dr. Yelley to the ultimate successful candidate, who was Ms. Miyamoko, I'm sorry, Ms. Wattad, who did receive the visiting. The successful candidate for which position? For the visiting professor. But you were complaining about the tenure track full-time position. And that was offered to somebody, and that person was a dozen years older than your client. Yes, but simultaneously to that. And without Dr. Yelley's knowledge, all on May 15th and 16th, the next position was then offered almost in the same breath to Ms. Wattad. And the point there is that in our complaint, we did allege facts about comparing Ms. Wattad and Dr. Yelley. We alleged their comparison in education, where Dr. Yelley's education was superior. We alleged that she was younger than Dr. Yelley. We alleged all the facts in terms of putting a comparison on the individual who did get the job. Now, it's true that she got the visiting professor position and not the assistant professor position, but that wasn't known at the time the charge was filed, and they're sufficiently related. Again, I do think the EEOC, the administrative exhaustion case law, is helpful on this point. There were two visiting professorships, correct? There were two where the claim was only about the one, the comparison to this younger employee. And what comparison would be made if you made a comparison with respect to the second? We made no such comparison at all. So for all the record shows, that person could have been older than your client? I believe he was older in the record. But the age discrimination law allows you to compare one individual to another. This isn't a pattern of practice that we're trying to show for that position. There was a plan to do that. In fact, Dr. Mietko said that, well, we have chosen to put somebody new in that visiting professor position in reference to that Dr. Yelley was already a candidate for the assistant and could have been considered for that. Now, that is a comparison in her own mind between Ms. Mietko, excuse me, from being Ms. Wattad and Dr. Yelley. And that's what the Plan B memo says at A400 and 401 in the record, that, well, informing the committee right there that we were not able to replace, I'm sorry, to hire for the Mr. Reif, Dr. Reif Kanin for that position. So we're moving on right away to offering Ms. Wattad the visiting professor position. And the very next day, the dean of the school writes a memo to the president asking for that permission. She says that this would solve, I'm sorry, she says that we want authorization to fill the spot that Reif Kanin would have filled. So it's the same job she's going to be performing in the sense of covering classes. Dr. Mietko also testified that it would solve our immediate staffing concerns. There was a sense of immediacy. It was done within 24 hours. It was about staffing in terms of teaching. Many of the duties between a visiting professor and the assistant professor were identical. So, counsel, you've reserved three minutes. Let's hear from your adversary. Yes. And maybe when you do come back up, if you get a chance to come back to the initial question I had about where in the complaint you alleged that the denial of the visiting professorship constituted a basis for relief. And in particular, if I could just draw your attention, you can look at this while you're sitting down, I think I'm looking at the right page of the complaint, but it could be wrong. It pages 349 through 351. So it's 349 and 351 in the appendix. Again, because as I read it, I think it only refers to discrimination in terms of the tenure track. So maybe you can come back to that when you come up. Well, I can see that right now. Okay. We'll come back to that. But you're in the right spot. Okay. Well, we'll get there. Why don't we turn to Ms. Gottfried? And we would like to thank you. We understand that there was an issue in terms of your co-counsel being indisposed. And we very much appreciate, on very short notice, your being able to fill in today. So thank you for that. Happy to do it. It's the way these things happen nowadays. Good morning, Your Honors. May it please the Court. My name is Allison Gottfried, and I'm here on behalf of Defendant Appellate, Mount St. Mary College. In November 2018, plaintiff filed the complaint in the instant action for age discrimination based on two decisions only. The failure to promote him to the assistant professor of accounting position in the spring of 2017, and the failure to renew his adjunct professor contract in the fall of 2017. We moved for summary judgment on these two claims. The district court granted the college's motion on these two claims. And plaintiff is not now seeking an appeal of the only two claims that were actually raised in the underlying case. Instead, for the first time in his opposition, he raises a hiring decision for a distinct visiting professor position that was not actually asserted in his complaint. In reply, the college addresses the impropriety of introducing a new theory of liability in opposition, and the court below agrees, saying it's unable to review, consider, or even render a decision on a liability for a claim that wasn't properly before it. Plaintiff then moves to reconsider. And the court refuses, I'm sorry, moves to reconsideration on the court's refusal to consider the visiting professor decision. Plaintiff admits in his appeal brief that he did so for the opportunity to elaborate on and provide a record of his position with the lower court. That is not a proper use of the motion for reconsideration. Plaintiff's motion was denied on procedural grounds and on the merits, with the court saying, you cannot rehash your old arguments. You cannot proclaim new arguments. Neither of those are appropriate at this time. He now seeks an appeal of the court's rejection of plaintiff's visiting professor argument and the court's denial of the motion for reconsideration. And we submit that it was not an abuse of discretion for the district court to err on either motion as it did. The first, kind of as a preliminary matter, the first point that I want to make is that we believe that this appeal is untimely. The way in which this motion was brought, I'm sorry, the motion for reconsideration was brought, was more properly addressed under Local Rule 6.3. So I have a question about that. Yes, Your Honor. Is a failure to comply with a local rule of the district court something that can ultimately render an appeal to our court untimely? Or with the memorandum, I guess it was the memorandum of law that was submitted in the district court. Even if it didn't comply with the local rules, would that still necessarily, I don't know, tolling the time is the right word, but push out the time for filing a notice of appeal for purposes of the federal rules? So we have something uniform. So basically, you know, Southern District, Eastern District, Connecticut, Vermont, you know, we all have different rules there. It would seem odd to me that a failure to comply with one district's local rules in terms of how you file a motion would have an effect on our court's jurisdiction. Your Honor, I believe it would because I think that is the gateway to getting into the court's jurisdiction. But I would also make the argument that setting aside the local rule, his appeal was untimely, even under FRCP 59, because while he did file a memorandum of law within the 28-day requirement, he didn't file a notice of motion, he didn't file the motion properly. What's a notice of motion? I'm from Connecticut. This is a strange language being spoken to me, and it seems to be a New York thing. You move for something, but you have to notify someone that you're going to move? Do you have to notify someone of the notice of a motion, too? I mean, what is this? I can't speak to the strangeness of the rule, but I can tell you is that when you file a motion in the Southern District of New York or the Eastern District of New York, the motion needs to be with a notice of motion, which is a paper notifying the parties of the premise of the motion, and then the memorandum of law, which sets forth the arguments. Yeah. I mean, this is sort of a local cultural norm that baffles me. It always struck me that when you serve a motion on people, they are thereby notified of the motion. But, you know, that's fine. But, again, it seems strange to me that whatever local customs may be adopted through the local rules and however useful they might be, that a failure to comply with that shouldn't have any effect on us. But maybe you take a different view. Understood, Your Honor. I do believe that we think that he didn't satisfy the obligation, but he needs to under either the local rules or the federal rules of civil procedure in order to get jurisdiction under this. And could you just be specific? What is the federal rule? Not the local rule. What is the federal rule that you would argue was not complied with? I'm sorry, Your Honor. I don't actually know the citation for the federal rule for the notice of motion, which we would argue was the part that he did not comply with. Yeah, but, again, that's not a thing. I mean, again, it's a New York thing. But I've never heard of a notice of motion in the federal rules of civil procedure, I don't think. But then again, I was mostly on the criminal side. So that's why I'm wondering, what's in the federal rules of civil procedure that was not complied with? Your Honor, I don't have that citation on me. I would be happy to provide it to the court after the argument if you would prefer. That's fine. Why don't we just proceed? We'll let you know if we need a supplemental file. Okay. Thank you, Your Honor. And while we think that this is a procedural infirmity, I don't want to be distracted from the underlying infirmities of the actual motion itself. So we don't believe that the district court erred in granting its decision at the summary judgment stage. And something that I think is very important to bring up here is that we believe that the proper standard for this court to review the district court's underlying decisions at summary judgment is actually abuse of discretion and not de novo. And the district court did not grant summary judgment in favor of the college on plaintiff's claim of a visiting professor position. In fact, plaintiff even admits that in his appeal brief. He says the district court did not deem the merits of a visiting professor position to have been litigated. I'd also point out that if you really did believe that, it would have been unusual for him to have then brought his state court claims on the visiting professor claims because they would have been undeniably precluded. And he would have known that prior to bringing that state court case. In fact, the district court repeatedly disclaims the notion that it can make a decision as to whether or not there existed a genuine issue of material fact on the visiting professor hiring decision. And when a district court does so, that is reviewed for abuse of discretion, not on a de novo standard. And as your honors know, this is a much more exacting standard. Second, the district court did not erroneously assess or overlook any material fact and did not render an impermissible decision. Remember, these are two separate and distinct decisions. One is for a full-time tenure-track professor. One is for what essentially amounts to a longer-term adjunct professor. The district court did a far-reaching review of their record in its quest to find a reason to entertain plaintiff's belated visiting professor theory. It reviewed the EEOC charge. And contrary to what my colleague says, it also reviewed the complaint. And it simply could not find where the visiting professor position was identified, discussed, or even indirectly related to the allegations in the charge or the complaint. And mind you, the court actually specifically notes it's not just looking for the term visiting professor, but it was looking for allegations related to the search for the visiting professor. It wasn't focusing exclusively on semantics, as my colleague calls it. In fact, what it was really saying is there is an absence of anything related to this in the EEOC complaint or, I'm sorry, the charge or the complaint. It wasn't about the presence of that thought. And am I looking in the right place, the one I referenced to your colleague? Page, I think it's 338 of the appendix. Is that the operative version of the complaint, or am I looking at the wrong thing? I just want to make sure I'm looking at the right thing. That's correct, Your Honor. Yes. And the plaintiff tries to circumvent this obvious issue by saying, okay, maybe it's not in there, but it is in there by inference, either because I've exhausted my administrative remedies and it is reasonably related to my EEOC charge, or it came up enough during discovery that I can consider this. Now, we submit that the exhaustion of administrative remedies argument is actually red herring here, because the idea behind the exhaustion argument is that something can be present within the district court complaint if it was raised either directly or reasonably related to the allegations in the EEOC. But that's not the posture that we have here. The idea here is that it is not present at all in the district court complaint, and so it is immaterial. Okay. Your Honors, I see I've run out of time. I think we have your argument, and thank you very much. Thank you. And again, thank you for coming up to speed so quickly to be able to appear before us. We appreciate that. Thank you very much. Mr. Raines, you have reserved three minutes for rebuttal. Thank you, Your Honor, and for your patience before. In the complaint, I'm looking specifically at Record A346, Paragraph 35. That is the place where the discussion about Dr. Yelley's experience, but also about his knowledge. But also in the complaint, there is at A349, there is the allegation that defendant chose a younger, less qualified female applicant for the position. I'm sorry, but that is the tenured track position. That's correct. And this issue about, well, the complaint didn't say visiting professor. But then there's a subsequent sentence that said it denied him continued work as a part-time adjunct professor on the basis of his age. So you have two sentences, each of which is very specific about the position that was the subject or the object of the purportedly discriminatory action. I mean, this is not a generic thing saying he was denied teaching positions based on discrimination. He alleges quite specifically it was a problem with the tenure track and a problem with a part-time adjunct professor position, both of which I understand to be distinct from the visiting professor position. Absolutely, but he didn't know anything about that in a 24-hour notice they were going to move on to the visiting professor. He didn't know that there would be— He could have amended the complaint. Well, that is probably an act that could have amended the complaint. But I believe that what's being proposed here—first of all, the court did concentrate quite a bit on the exhaustion of administrative remedies in the Young case that it cited. My understanding was that was the basis for saying that there was no ticket. In terms of amending the complaint, I think basically the defendant is proposing an administrative snarl. At page 15, we quote their language about it. What would have had to happen is that we would have had to file a new charge with the EOC, say that it related back to the previous charge. The EOC had already closed— You could have filed an amended complaint. If the judge at that point had ruled against you solely on the basis that the EEO charge was more limited and did not constitute exhaustion for this other purpose, you would have had that claim before us, the same EEO claim that you're making. But there wouldn't be an alternative ground for affirming, which would, for example, be, well, I don't really care what the EEO did because you didn't argue this as a claim before the district court. We would have had a claim that also encompassing that the EEOC didn't open the case—reopen the case so that we could then make a related claim. I thought that was an incredible thicket to ask. I'll just address your Rule 53. Yeah, just take one more minute to wrap that up, and we've already kept you beyond your time, so just wrap up real quickly on that point. It does not make any sense to me about how Rule 59 would be one way to challenge the district court, and if you missed that because you were supposed to do it by the local rule. And I assume that your argument is that it was not a willful violation, which I understand to be our standard, that if it wasn't a willful violation of a local rule and it was just a question of form that you make up quickly, then that shouldn't be a bar to our jurisdiction. Is that the gist of it? That's correct, and actually the district court did go on to review with the Rule 59 and did not hold—it definitely held we didn't comply with a local rule, which plaintiffs did not, but it did not say that such was fatal, probably because of the same rules about the ambiguity that you've pointed out, Your Honor. Okay. I think we have your argument. So, again, thank you very much to both of you, and we'll reserve the decision.